William R. Boy, J.
This is a motion by the defendants for an order dismissing the complaint herein and for summary judgment in their favor.
On May 29, 1970, plaintiff and the defendant, Medina-Maple, Inc., entered into a 10-year written lease of a store then under construction by the plaintiff at Maple Ridge Plaza Shopping Center, Medina, New York. The lease was guaranteed by the defendant, West Spring, Inc., parent corporation of the defendant, Medina-Maple, Inc.
On the date of the execution of the within lease, the construction of the premises had not been completed, and, in fact, at the time of the execution a strike was in progress and construction had ceased because of this.
The intended use of the premises by the defendant, Medina-Maple, Inc., as set forth in the lease, was for the sale of fabrics, yard goods and items incidental thereto, such as patterns, notions, trimmings, upholstery fabrics, plastic yard goods and decorator goods.
The lease contained a clause under article 2, dealing with the commencement of the term of the lease in the event construction was not completed at the time of the execution of the lease. *894 An addendum to article 2.03 of the lease contained the following language: “ Notwithstanding anything contained in this Article 2 to the contrary, it is understood and agreed that Tenant shall only be required to take occupancy of the Premises during the periods beginning on January 1 and ending March 15, inclusive, and beginning on July 1 and ending on September 15, inclusive, during the calendar year in which falls the Term Commencement Date or if the Term Commencement Date shall be after September 15 in any calendar year, then in such event no later than March 15 of the next succeeding calendar year, if the Premises are ready for Tenant’s occupancy during such periods. If the Premises are not ready for Tenant’s occupancy during such periods, irrespective of when the Premises are complete or ready for Tenant’s occupancy, this Lease shall terminate without further act of either party on March 16,1971 unless Tenant shall have taken possession of the Premises prior to March 16,1971.” (emphasis supplied).
The plaintiff notified the defendant, Medina-Maple, Inc., by certified mail on March 24, 1971, that the store was completed and that rent would commence no later than April 3,1971.
The defendants, relying on the language of the addendum to article 2.03 of the lease, refused to take possession of the premises, contending that since the premises were not ready for occupancy by March 16, 1971, the lease terminated as of that date without further act of either party.
Because of the alleged default, plaintiff commenced this action for damages in the amount of $4,000 against the defendant, Medina-Maple, Inc. and the defendant, West Spring, Inc., as guarantor of the lease. The defendants, in their answer, denied the material allegations of the complaint and set forth an affirmative defense that the plaintiff failed to deliver possession of the premises on or before M^rch 16, 1971, and that the lease terminated as of that date. Thereafter, the defendants brought on this motion for summary judgment.
Plaintiff, in its reply affidavit, contends that article 23.04 of the lease, the so-called Force Majeure clause, controls in this situation, and that their time within which to complete construction of the premises was extended by reason of the strike in progress at the time of the execution pf the lease. That clause of the lease reads as follows: “ 23.04 — force majeure. The period of time during which either party is prevented or delayed in the performance of the making of any improvements or repairs or fulfilling any obligation other than the payment of rent required under this Lease due to unavoidable delays caused *895 by fire, catastrophe, strikes or labor trouble, civil commotion, Acts of God or the public enemy, governmental prohibitions or regulations or inability to obtain materials by reason thereof, or other causes beyond such party’s reasonable control, shall be added to such party’s time for performance thereof, and such party shall have no liability by reason thereof.”
The general rules with respect to the construction of leases are the same as with any other contract, and a lease is to be enforced in accordance with the expressed intention of the parties and to carry out their intention. (Matter of Loew’s Buffalo Theatres, 233 N. Y. 495.) In addition, it is impossible to determine the intent of the parties without examining the lease as a whole, reading all applicable provisions of the lease together. (R. I. Realty Co. v. Terrell, 254 N. Y. 121.)
An examination of the lease in question leads this court to the opinion that the two quoted portions of the lease are not inconsistent and each can be given its full effect. Article 23.09 of the lease provides as follows: ‘ ‘ 23.09 — effect of captions. The captions or legends on this Lease are inserted only for convenient reference or identification of the particular paragraphs. They are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Lease, or any paragraph or provision thereof.”
The addendum to article 2.03, as quoted above, might lead one to believe that it only applies to article 2.03, but, in view of the language of article 23.09, it is clear that this language applies to the lease as a whole and would apply even to article 23.04, the clause dealing with Force Majeure.
Also, a reading of the lease in connection with article 23.04 indicates that it applies to the making of any improvements or repairs and does not specifically deal with construction. It further deals with any obligation under the lease other than the obligation to pay rent. It further applies to either party and not merely to the landlord. There is an article in the lease dealing with the responsibility of both landlord and tenant with respect to damage by fire and the repair thereof (see art. 13). It provides in that article that if repairs have not been commenced within 60 days from the date of the destruction or damage by fire and thereafter completed within a reasonable time, in no case to exceed five months, the lease may immediately be terminated by tenant by serving written notice to the landlord. It is clear that article 23.04 would apply in such a case. Also, there are provisions under article 10 dealing with the obligations of both the landlord and the tenant to make certain *896 repairs or alterations and to maintain the premises. It is clear that article 23.04 would apply to any delay by either party in complying with the provisions of article 10.
At the time of the execution of the lease, a strike was in progress at the construction site of the premises subject to the lease. The parties were aware of the delays that could result from such a strike, and the court is of the opinion that they took this into consideration in setting a time limit on the obligation of the tenant to take possession as set forth in the addendum to article 2.03. If the premises had been completed prior to March 16, 1971 and the defendant had entered into occupancy,, article 23.04 would have been operative with respect to the obligations of the landlord and tenant under the lease.
In addition, the court is of the opinion that article 23.04 does not deal with the obligation of the landlord to deliver occupancy. Nowhere in this very detailed contract is the landlord obligated, to deliver possession of the premises, and it suffers no penalty for failure to deliver such possession.
The very detailed language of this lease, which is silent as to any obligation on the part of the landlord to deliver possession, save the implied obligation of good faith, leads the court to believe that the intent of the parties was that article 23.04 would come into effect only after occupancy had been taken and not prior thereto. Article 2.03 is controlling with respect to the obligation of the tenant to take possession prior to March 16, 1971. Clearly, the intent of the parties in executing this agreement was that if the premises were not ready for the tenant’s occupancy by March 16, 1971, the lease would terminate. The court believes that the language contained in article 2.03, as quoted above, is clear and unambiguous with respect to the termination of the within lease.
In view of the above, the court is of the opinion that the lease in question terminated as of March 16,1971, and that the defendant was not obligated to take possession after that date.
Accordingly, the motion is granted and the complaint is dismissed, without costs to either party.